UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SALVADOR N. NEGRETE,

    Plaintiff,

v.

G. D. LEWIS, et al.,

    Defendants.

Case No. 13-cv-05079-HSG (PR)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; STAYING ACTION AND REFERRING FOR SETTLEMENT PROCEEDINGS**

Re: Dkt. No. 43

### INTRODUCTION

Plaintiff, a California prisoner currently incarcerated at Pelican Bay State Prison ("PBSP") filed this *pro se* civil rights action under 42 U.S.C. § 1983. The operative pleading is Plaintiff's Second Amended Complaint ("SAC"), which the Court screened on December 18, 2015. The Court found that, liberally construed, the SAC alleges that PBSP Defendant A. Barneburg retaliated against Plaintiff in violation of the First Amendment, and that PBSP Defendants D. Strain and former warden G.D. Lewis deprived Plaintiff of basic needs in violation of the Eighth Amendment. Now before the Court is Defendants' motion for summary judgment. Plaintiff has filed an opposition, and Defendants have filed a reply.

//

//

**STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

//
//

**DISCUSSION**

Defendants argue they are entitled to summary judgment on the merits, and based on qualified immunity. The Court will set forth the facts giving rise to each of Plaintiff's claims below.

**I.     First Amendment Retaliation Claim**

Plaintiff's allegations are taken from his verified SAC (dkt. no. 39), and the evidence submitted with his opposition (dkt. no. 58-1). On June 16, 2010, Plaintiff filed a state petition for writ of habeas corpus in Del Norte County Superior Court challenging PBSP's lockdown of a group of inmates identified as "Southern Hispanics." Dkt. No. 39 at 12; Dkt. No. 58-1 at 3.[1] On July 6, 2010, the state court ordered informal responses. Dkt. No. 39, Ex. C; Dkt. No. 58-1 at 3. On or about September 22, 2010, the office of the state attorney general filed an informal response, which was accompanied by a declaration from Defendant Barneburg. Dkt. No. 39 at 13 & Exs. D, E; Dkt. No. 58-1 at 3. Therein, Barneburg stated that Plaintiff was classified as a Southern Hispanic, which was a group affiliated with the Mexican Mafia prison gang and that Plaintiff would be going through the gang validation process. *See id.*

Plaintiff received Barneburg's declaration on September 29, 2010. Dkt. No. 58-1 at 3; Dkt. No. 39 at 13. On September 30, 2010, Plaintiff was scheduled for and called to the prison law library to prepare his reply to the informal response. Dkt. No. 58-1 at 3. After being in the law library for approximately 45 minutes, Barneburg and another officer—who, like Barneburg was an institutional gang investigator—entered the library and ordered everyone to sit down and/or stay seated while Plaintiff was called to step forward. Dkt. No. 58-1 at 3-4.

Plaintiff was ordered to "strip out," which he knew to mean strip naked. *Id.* After he was completely naked—in the presence of inmates, officers, and a female law librarian—he was ordered, "Open your mouth, lift your nutsack, turn around, squat, cough and now let me see the

---

[1] References to pages for Plaintiff's filings are to the page numbers that are automatically assigned by the Court's electronic filing system and appear in the upper right-hand corner of the page.

3

bottom of your feet." *Id.* He was then handed his underwear and told "that was it," meaning those were the only clothes being returned to him. *Id.*

Plaintiff was then informed that he was going to be photographed. When he asked what this was all about, Barneburg stated, "All Southern Hispanics do is insight [sic] violence. We should lock you all down." *Id.* Plaintiff was photographed and said nothing further. *Id.*

Plaintiff's state habeas action was joined with that of various other prisoners who had also complained of unjust prison lockdowns. Dkt. No. 58-1 at 6. The petitioners ultimately prevailed, and an appeal filed by then warden Lewis was denied. *In re Morales*, 212 Cal. App. 4th 1410, 1430 (2013); Dkt. No. 58-1 at 7.

The September 30, 2010 search left Plaintiff fearful that he would be taken to segregated housing, and so he filed a motion for a temporary restraining order ("TRO") against Barneburg on October 12, 2010 in Del Norte County Superior Court. Dkt. No. 39 at 14 & Ex. F; Dkt. No. 58-1 at 4. Plaintiff also filed an inmate appeal on or about November 21, 2010, arguing that he had been unjustly placed in the gang validation process. Dkt. No. 39 at 14 & Ex. A; Dkt. No. 58-1 at 4-5. On November 9, 2010, the state court issued an order to show cause on Plaintiff's TRO motion and appointed counsel to represent Plaintiff. Dkt. No. 39 at 14 & Ex. G; Dkt. No. 58-1 at 5.

On March 24, 2011, Plaintiff was transported to state court for a hearing on his TRO motion. Dkt. No. 58-1 at 5. When he returned to PBSP, he was not returned to his regular housing unit but was instead placed inside a holding cage in a program office. *Id.* Defendant Strain later entered the office. *Id.* When Plaintiff asked what was going on, Strain stated, "There was some metal found that was yours, so you're going to the hole." *Id.* Plaintiff denied possessing any metal. *Id.* Plaintiff was soon after taken to a "ZZ" cell in the Security Housing Unit ("SHU"), where he remained for four nights. Dkt. No. 58-1 at 6-7. When he asked why he was not taken to the Administrative Segregation Unit ("ASU"), Plaintiff was told there was no room. *Id.* When he asked why he could not be returned to his cell, where he was single-celled,

4

Plaintiff was not given a response. Dkt. No. 58-1 at 5-6.

In April 2011, Plaintiff had a disciplinary hearing and was found guilty of possessing an inmate-manufactured weapon. Dkt. No. 39 at 21-23; Dkt. No. 58-1 at 7-8. After exhausting inmate appeals, he filed a state petition for writ of habeas corpus in Del Norte County Superior Court, claiming that there was no evidence he was in possession of contraband and that the disciplinary proceedings were held in retaliation for his filing the earlier petition in state court. Dkt. No. 58-1 at 8. On October 27, 2011, the state court ordered an informal response. Dkt. No. 58-1 at 8; Dkt. No. 39, Ex. L. On November 29, 2011, Defendant Lewis, through counsel, filed an informal response, which Plaintiff received on December 6, 2011. Dkt. No. 39, Ex. M; Dkt. No. 58-1 at 8.

On December 12, 2011, Plaintiff was in the prison law library conducting research and making photocopies for his reply. Dkt. No. 58-1 at 8. Upon returning, he was not taken to his cell but instead to a temporary holding cell. *Id.* When he asked what was happening, Plaintiff was told that his cell was being searched. *Id.* Plaintiff had been in the holding cell for thirty minutes when Barneburg appeared at the holding cell window and stated, "I was doing a search." *Id.* Approximately five minutes later, Plaintiff was escorted back to his cell, and noticed all his personal and legal paperwork in a pile in the middle of the floor. Dkt. No. 58-1 at 9. After putting everything back in place, Plaintiff determined that the only missing items were four photos from his photo album. *Id.* The photos had all been previously issued by ASU staff as allowable property. *Id.* However, Barneburg deemed the photos sexually explicit, causing Plaintiff to go through another disciplinary hearing. *Id.*

Defendants do not dispute any material aspects of Plaintiff's account but do offer the following nonmaterial disparities. First, Barneburg states that he does not remember specifically searching Plaintiff in the prison law library on September 30, 2010, but states that he did conduct inmate searches in the law library at various times. Barneburg Decl. (dkt. no. 44), ¶¶ 15-16, 19-20. When he conducted searches in the law library, he searched all inmates, not just one. *Id.* ¶ 18.

Barneburg also states that he would not have made a statement along the lines of, "All Southern Hispanics do is insight [sic] violence. We should lock you all down." *Id.* ¶ 17. Finally, Barneburg states that he would not have conducted an unclothed body search of an inmate in the presence of a female, absent an emergency. Barneburg Reply Decl. (dkt. no. 65), ¶ 15.

Regarding the December 12, 2011 search of Plaintiff's cell, Barneburg simply states that, as institutional gang investigator, he would occasionally search the cells of inmates whom he had identified as potentially involved in gang activity. Barneburg Decl. ¶¶ 61-62. During his search of Plaintiff's cell, Barneburg found four photos showing female nudity, which he confiscated. *Id.* ¶ 66.

Defendants maintain that the searches were necessary to determine whether Plaintiff was involved with the Southern Hispanic prison gang. The only pre-search evidence Defendants offer linking Plaintiff to a prison gang are: (1) a May 2007 write-up related to Plaintiff possessing inmate manufactured weapons; (2) an October 2007 incident where Plaintiff stabbed his cellmate, who Defendants concede was a Southern Hispanic, i.e., not from a rival gang; and (3) a July 2008 inmate incident where Plaintiff was found with a note in his shoe containing names and identifying information for a validated Mexican Mafia member and validated associate. Barneburg Decl. ¶¶ 27, 35-36.[2] Plaintiff maintains that he is neither a member nor associate of a prison gang and denies knowing anything about the note that was found in his state-issued shoe. Dkt. No. 58-1 at 1-2.

Plaintiff alleges that Barneburg's September 30, 2010 search of Plaintiff's person and Barneburg's December 12, 2011 search of Plaintiff's cell were done in retaliation for Plaintiff's state court filings. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an

---

[2] Defendants also assert that on October 5, 2011, i.e., after the body search but before the cell search, the investigative services unit intercepted and confiscated prohibited correspondence intended for Plaintiff. O'Brien Decl. (dkt. no. 47), Ex. B, p. 4. There is nothing in the record, however, showing the disallowed correspondence was related in any way to gang activity.

6

inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The prisoner must show that the type of activity in which he was engaged was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). Retaliatory motive may be shown by the timing of the allegedly retaliatory act and other circumstantial evidence, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). However, mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

Defendants do not dispute that Plaintiff engaged in activity protected by the Frist Amendment by filing actions in state court. Defendants urge that Plaintiff's retaliation claim fails because Plaintiff cannot show a causal connection or the absence of a legitimate penological purpose for the searches. Triable issues of fact require rejection of Defendants' arguments.

Regarding causal connection, a plaintiff must offer evidence that defendants knew about the protected conduct. *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009). In addition, plaintiff must show "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." *McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (alteration in original) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)). To survive summary judgment without direct evidence, therefore, plaintiff must "present circumstantial evidence of motive, which usually includes: (1) proximity in time

7

between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." *Id.* (alterations and omission in original) (quoting *Allen*, 283 F.3d at 1077).

Barneburg does not deny that he was aware of Plaintiff's 2010 state habeas filing prior to the September 2010 body search. Nor does he deny that he was aware of Plaintiff's 2011 state habeas filing prior to the December 2011 cell search. Defendants only argue that "[Plaintiff] does not give any reason why Defendant Barneburg would have known about [the attorney general's] response [to the 2011 filing], which addressed the disciplinary charge of possession of a deadly weapon." Mot. Summ. J. (dkt. no. 43), at 16. Viewing the evidence and drawing the reasonable inferences therefrom in the light most favorable to Plaintiff, a reasonable jury could find that Barneburg knew about Plaintiff's protected conduct in 2011. The state issued its response to Plaintiff's 2011 state petition approximately two weeks before Barneburg searched Plaintiff's cell, and by that time, Plaintiff had filed a number of state actions and inmate grievances, some of which included claims against Barneburg directly.

Similarly, Barneburg's 2010 body search of Plaintiff took place only eight days after the state filed its response, including Barneburg's declaration, in relation to Plaintiff's 2010 state petition. Although timing alone does not support a finding of retaliation, there is additional evidence that, when coupled with the timing, is sufficient to permit a jury to find that Barneburg knew of the First Amendment activity and searched Plaintiff and Plaintiff's cell because of it. Plaintiff submits a declaration from another inmate describing retaliatory treatment he endured at PBSP after filing a state petition challenging unjust lockdowns. Dkt. No. 59 at 26-27. Specifically, he describes being subject to "abusive cell searches, extensive delay of incoming mail, being placed on contraband watch, . . . and being housed in a holding cell for numerous days which is not meant for nor fit for living conditions." *Id.* Further, Plaintiff presents evidence that Barneburg stated during the body search, "All Southern Hispanics do is insight [sic] violence. We

8

should lock you all down." This statement was directly related to the subject of the Plaintiff's state court filing, to which Barneburg had responded just days prior. Finally, as noted above, Plaintiff maintains that he is not a gang member or affiliate. Indeed, Defendants admit that Plaintiff has been investigated for involvement with the Mexican Mafia multiple times despite the fact that there has not once been sufficient evidence to validate him as a gang member. Barneburg Decl. ¶¶ 37-40, 42. On this record, Plaintiff has raised a triable issue that his filing of state court actions was the substantial or motivating factor for Barneburg's searches. *See Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003) (triable issue existed as to whether the motive for a gang validation was retaliatory based on statements indicating that the validation was payback for earlier complaints, combined with suspect timing and the use of evidence previously rejected).

Regarding Defendants' claim that there was a legitimate penological purpose for the searches, the prisoner bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. *See Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995) (defendants had qualified immunity against retaliation claim based on their decision to transfer prisoner to preserve internal order and discipline and maintain institutional security).

Here, Barneburg states that he conducted the searches as part of his job as institutional gang investigator. Barneburg Decl. ¶¶ 41, 61. However, the record shows that the only incidents in Plaintiff's file potentially connecting Plaintiff to gang activity took place in May 2007, October 2007, and July 2008, i.e, well over two years prior to the September 2010 body search and well over three years prior to the December 2011 cell search. Viewing the evidence in the light most favorable to the nonmoving party, a reasonable jury could disbelieve Barneburg's statement that the searches were meant to curb gang activity, given that he does not identify any gang activity occurring even remotely near the time of the searches. *See Bruce*, 351 F.3d at 1289 ("prison

9

officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right"). Here, there is nothing in the record that irrefutably negates Plaintiff's claim of retaliatory motive in the searches. There are thus triable issues with regard to the existence of legitimate penological purposes for the searches.

A trier of fact must hear both versions and decide whom to believe. Plaintiff has established "genuine dispute[s] as to [] material facts" on his retaliatory search claim. Fed. R. Civ. P. 56(a). Summary judgment therefore is not appropriate on the claim.

Defendants contend Barneburg nonetheless is entitled to judgment, based on qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (overruling requirement in *Saucier v. Katz*, 533 U.S. 194 (2001), that court ruling on qualified immunity claim consider first prong of test before addressing second prong). The court may exercise its discretion in deciding which prong to address first. *Id.*

Here, the same factual disputes that preclude summary judgment on the retaliation claim preclude summary judgment on the qualified immunity defense because Barneburg would not be entitled to qualified immunity under Plaintiff's version of the facts, which asserts a deliberate act of retaliation. *See CarePartners, LLC v. Lashway*, 545 F.3d 867, 883 (9th Cir. 2008) (law has been clearly established since at least 1989 that "it is unlawful for the government to deliberately retaliate against a citizen for exercising his right to comment on (and publicly criticize) government officials' actions and his right to access the courts and administrative appeals process

10

for redress of grievances"). Consequently, Barneburg is not entitled to qualified immunity.

## II.     Eighth Amendment Claim for Deprivation of Basic Needs

As noted above, starting on March 24, 2011, Plaintiff was housed in what is known as a ZZ cell for four nights. According to Plaintiff, the cell contained a "raggedy" mattress on the floor. Dkt. No. 58-1 at 6-7. The cell was dirty and had shaved-hair stubble on the floor. *Id.* Plaintiff's only clothes were underwear and socks, and he only had a blanket and sheets to stay warm. *Id.*; SAC at 19. Given the small size of the cell, he had to sleep in a cramped position, with his head under the toilet. *Id.* Plaintiff asserts he was cold. *Id.*

According to Defendants, Plaintiff had to be placed in a ZZ cell in the SHU because, at the time, the ASU cells were all being used. Strain Decl. ¶ 14; Barneburg Decl. ¶ 45; Lewis Decl. ¶¶ 7-8. ZZ cells measure seven feet long by five feet wide, and records show that the building where Plaintiff was housed was between 72 and 75 degrees during the entire time Plaintiff was there. Strain Decl. ¶ 24; Barneburg Decl. ¶ 57 & Ex. A. Because there is air flow through holes in the cell doors, the temperature is generally the same throughout the SHU building, including the ZZ cells. Barneburg Decl. ¶ 58.

Plaintiff alleges that the conditions in the ZZ cell violated the Eighth Amendment's proscription against cruel and unusual punishment. The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Amendment also imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *id.* (citing *Wilson*, 501 U.S. at 297).

11

Viewing the evidence in a light most favorable to Plaintiff, the conditions he experienced in the ZZ cell were not sufficiently serious to violate the Eighth Amendment. In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider "[t]he circumstances, nature, and duration of the deprivation." *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The more basic the need, the shorter the time it can be withheld." *Id.* Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See id.* at 732-733.

To be sure, accepting Plaintiff's version of the facts as true, he did endure uncomfortable conditions. However, the conditions did not last long, and he does not claim that he was denied the basic necessities of life, including shelter, food, and drinking water. Although Plaintiff claims that he was cold, the daily thermometer readings indicated that the temperature in his building was above 70 degrees, and he admits that he had a blanket to stay warm. Enduring the conditions he describes for four nights is not the sort of deprivation that rises to the level of an Eighth Amendment violation. *Cf. Hearns v. Terhune*, 413 F.3d 1036, 1041-42 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work, sinks that were rusted and stagnant pools of water infested with insects, and a lack of cold water even though the temperature in the prison yard exceeded 100 degrees, enough to state a claim of unconstitutional prison conditions); *see e.g., Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir.) ("[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."), *amended*, 75 F.3d 448 (9th Cir.), *cert. denied*, 516 U.S. 916 (1995); *Holloway v. Gunnell*, 685 F.2d 150 (5th Cir. 1982) (no claim stated where prisoner forced to spend two days in hot, dirty cell with no water); *Evans v. Fogg*, 466 F. Supp. 949 (S.D.N.Y. 1979) (no claim stated by prisoner confined for 24 hours in refuse-strewn cell and for two days in flooded cell).

Although the Eighth Amendment protects against cruel and unusual punishment, this does

12

not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer de minimis injuries. *See, e.g.*, *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (8th Amendment excludes from constitutional recognition de minimis uses of force); *Anderson*, 45 F.3d at 1314-15 (temporary placement in safety cell that was dirty and smelled bad did not constitute infliction of pain); *Hernandez v. Denton*, 861 F.2d 1421, 1424 (9th Cir. 1988) (allegation that inmate slept without mattress for one night is insufficient to state 8th Amendment violation and no amendment can alter that deficiency), *judgment vacated on other grounds*, 493 U.S. 801 (1989). The evidence here, even when viewed in a light most favorable to Plaintiff, does not establish that Plaintiff suffered anything more than de minimis injuries for the four nights he was placed in the ZZ cell. Accordingly, Defendants are entitled to summary judgment on this claim. *See Celotex Corp.*, 477 U.S. at 323.[3]

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendants' motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART as follows:

   a. Summary judgment is GRANTED in favor of Defendants Strain and Lewis on Plaintiff's Eighth Amendment claim. The Clerk shall terminate these Defendants from the docket in this action.

   b. Summary judgment is DENIED as to Defendant Barneburg on Plaintiff's retaliation claim. The Clerk is directed to correct the spelling of Defendant Barneburg's name on the court docket by substituting "Barneburg" for "Bareburg."

2. The retaliation claim is hereby REFERRED to Magistrate Judge Nandor Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings. Such proceedings shall take place within 120 days of the date this order is filed, or as soon thereafter as Magistrate

---

[3] Because the Court finds that Defendants are entitled to summary judgment on the merits of Plaintiff's Eighth Amendment claim, a qualified immunity analysis is not necessary.

13

Judge Vadas's calendar will permit. Magistrate Judge Vadas shall coordinate a place, time, and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon.

The Clerk shall send Magistrate Judge Vadas a copy of this order.

3. The case is STAYED pending the settlement proceedings. The Clerk shall ADMINISTRATIVELY CLOSE this case until further order of the Court.

This order terminates Docket No. 43.

**IT IS SO ORDERED.**

Dated: 11/30/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge